IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DANIELLE M. STETSON, | ) | |
| | ) | |
| Plaintiff, | ) | 4:10CV3037 |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM AND ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, Danielle M. Stetson ("Stetson"), claims in this Social Security appeal that the Commissioner's decision to deny her supplemental security income and disability insurance benefits is contrary to law and not supported by substantial evidence. The Commissioner's decision will be affirmed.

### *BACKGROUND*

Stetson protectively filed a Title XVI application for disability benefits on April 6, 2004. (Tr. 118.) On February 8, 2006, Stetson filed a Title II application for disability benefits. (Tr. 63.) The Title XVI claim was denied initially and on reconsideration. (Tr. 760, 766.) The Title II application was elevated to hearing level and joined with the Title XVI claim upon its filing. (Tr. 66-67.)

An administrative hearing regarding the applications was held on April 25, 2007, before an administrative law judge ("ALJ"). (Tr. 15.) Stetson appeared in Lincoln, Nebraska with her attorney and testified. (*Id.*) Thomas H. England, Ph.D., an impartial medical expert, and Gail F. Leonhardt, an impartial vocational expert, also testified. (*Id.*)

On August 2, 2007, the ALJ issued a decision in which he concluded that Stetson was not under a disability as defined in the Social Security Act. (Tr. 15-28.) In his decision, the ALJ evaluated Stetson's disability claim by following the five-step sequential analysis prescribed by the Social Security Regulations.[1] *See* 20 C.F.R. §§ 404.1520 and 416.920.  In doing so, the ALJ found as follows:

1. Stetson meets the insured status requirement of the Social Security Act from July 31, 2005 through December 31, 2008. (Tr. 18.)

2. Stetson has not engaged in substantial gainful activity since March 31, 1984, the alleged date of onset. (Tr. 18.)

3. Stetson has the following severe combinations of impairments: asthma, heart problems, learning disorders, speech problems, depression, anxiety and headaches. (Tr. 18.)

---

[1] The Social Security Administration uses a five-step process to determine whether a claimant is disabled.  These steps are described as follows:

> At the first step, the claimant must establish that he has not engaged in substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the RFC to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

*Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006).

2

4.  Stetson does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19.)

5.  Stetson has the residual functional capacity to perform sedentary work except Stetson requires an environment of no more than moderate concentrated ambient air qualities and no more than moderate exposure to smoke, dust, fumes, extreme cold, heat and humidity. Stetson should not work around moving machinery unless it is not in her work station. When around machines, Stetson can be exposed to moderate levels of dust, smoke, and fumes. She should avoid unprotected heights. Stetson's ability to understand, remember, and carry out simple and short instructions at the unskilled level with 1, 2, 3 steps is mildly limited and at semiskilled levels is moderately limited. Carrying out detailed unskilled instructions with 1, 2, 3 steps is moderately limited, but semiskilled instructions is markedly limited. The ability to make simple and work related judgments involving unskilled work is mildly limited and involving semiskilled work is moderately limited. Stetson's ability to interact with the public at the unskilled or semiskilled level is moderately limited, but Stetson's ability to interact with coworkers is mildly limited at the unskilled and moderately limited at the semiskilled levels and with supervisors is moderately limited at the unskilled level and semiskilled level. Stetson's ability to respond appropriately to work pressures in the usual work setting in unskilled work is moderately limited and semiskilled work is markedly limited. The ability to respond appropriately to changes in the usual work setting is moderately limited and at the semiskilled level is markedly limited. (Tr. 20.)

6.  Stetson has no past relevant work. (Tr. 26.)

7.  Stetson was born on March 31, 1984, and was approximately 19 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. (Tr. 26.)

8.  Stetson has at least a high school education and is able to communicate in English. (Tr. 26.)

9. Transferability of job skills is not an issue because Stetson does not have past relevant work. (Tr. 26.)

10. Considering Stetson's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Stetson can perform. (Tr. 27.)

11. Stetson has not been under a disability, as defined in the Social Security Act, from March 31, 1984 through the date of the decision. (Tr. 27.)

The Appeals Council denied Stetson's request for review on December 22, 2009. (Tr. 8-10.) Thus, the ALJ's decision stands as the final decision of the Commissioner of Social Security.

## DISCUSSION

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. *Hogan v. Apfel*, 239 F.3d 958, 960 (8th Cir. 2001). "Substantial evidence" is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *Id.* at 960-61; *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome. *See Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001).

This court must also review the decision of the Commissioner to decide whether the proper legal standard was applied in reaching the result. *Smith v. Sullivan*, 982 F.2d 308, 311 (8th Cir. 1992). Issues of law are reviewed de novo. *Olson v. Apfel*, 170 F.3d 820, 822 (8th Cir. 1999); *Boock v. Shalala*, 48 F.3d 348, 351 n.2 (8th Cir. 1995).

Stetson makes two arguments on appeal. First, Stetson contends that the ALJ erred by failing to include all of the limitations imposed by the medical expert, Dr. Thomas England, Ph.D. ("Dr. England"), into the residual functional capacity ("RFC") and include these limitations in the hypothetical question posed to the vocational expert. Second, Stetson maintains that the ALJ erred by discounting her subjective complaints without properly discussing the factors set out in *Polaski v. Heckler*, 739 F.2d 1320, 1321-22 (8th Cir. 1984). As explained below, the court finds each of Stetson's arguments unpersuasive.

### 1. *Medical Evidence*

Stetson complains that the ALJ failed to incorporate all of the limitations identified by Dr. England into the RFC. Specifically, Stetson maintains that the ALJ erred in concluding that Stetson was "not limited with numerous moderate and marked limitations identified by Dr. England in her ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for long periods of time, to work in coordination with others without distracting them or being distracted, to interact with the general public, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of interruptions." (Filing 16, Pl.'s Br. Supp. Mot. Summ. J. at CM/ECF p. 13.) Stetson further argues that the ALJ erred in failing to incorporate each of the limitations identified by Dr. England into the hypothetical posed to the vocational expert.

Stetson is correct that the ALJ did not methodically incorporate all of the limitations identified by Dr. England into the RFC or discuss each of the limitations. However, the ALJ was not obligated to do so. "In denying disability, the ALJ does not have to discuss every piece of evidence presented." *Miller v. Shalala*, 8 F.3d 611, 613 (8th Cir. 1993). Rather, the ALJ must only develop the record fairly and fully. *Id*. Moreover, "[a]n ALJ's failure to cite specific evidence does not indicate that such

5

evidence was not considered." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). Here, it is apparent that the ALJ fully considered Dr. England's testimony. In fact, the ALJ afforded Dr. England's opinion "great weight." (Tr. 24.) While each limitation identified by Dr. England was not specifically listed in the RFC, the ALJ's conclusions with respect to Stetson's limitations are consistent with those identified by Dr. England.

Dr. England testified that Stetson had a mild limitation in understanding and remembering short and simple instructions and a mild to moderate limitation in carrying out short, simple instructions. (Tr. 842.). Dr. England stated that depending on complexity, Stetson had a moderate to marked limitation in understanding and remembering detailed instructions and a marked limitation in carrying out detailed instructions. (843.) Dr. England further testified that Stetson had a mild to moderate limitation in making simple, work-related judgments. (*Id*.) Dr. England stated that Stetson had mild to moderate limitations in interacting with the public for brief periods and a mild to moderate limitation in interacting with supervisors and coworkers. (*Id*.) Dr. England testified that Stetson had moderate to marked limitations in dealing with pressures in a work setting and moderate to marked limitations in responding appropriately to changes in routine, depending on the type of change and complexity. (*Id*.)

Upon further questioning by Stetson's counsel, Dr. England testified that Stetson had a mild limitation in asking questions and requesting assistance and that she had a mild to moderate limitation in maintaining attention and concentration for extended periods of time. (Tr. 852.) He also stated that Stetson had a mild limitation in remembering locations and simple and repetitive work-like procedures. (Tr. 851.) Dr. England noted, however, that if procedures were more complex, Stetson's limitations would increase. (*Id*.) Dr. England further testified that Stetson could function relatively independently in setting simple, repetitive goals and making plans, but that if tasks were more complex or if there were changes, she would have

6

moderate to marked limitations in some instances. (Tr. 851-52.) Additionally, Dr. England stated that Stetson had a moderate limitation in her ability to complete a normal workday and work week without interruption from psychologically-based symptoms, with periods of marked limitations due to emotional stressors. (Tr. 852-53.)

Similar to Dr. England, the ALJ concluded that Stetson's ability to understand, remember and carry out simple instructions was mildly limited at the unskilled level and moderately limited at the semiskilled level (Tr. 26.) The ALJ found that Stetson was moderately limited in understanding, remembering and carrying out detailed instructions at the unskilled level and a markedly limited at the semiskilled level. (Tr. 858.) The ALJ also stated that Stetson's limitations at the skilled level were extreme. (*Id*.) Again, like Dr. England, the ALJ found that Stetson had a mild limitation in making simple work-related judgments at the unskilled level and a moderate limitation at the semiskilled level (Tr. 26.) The ALJ concluded that Stetson's ability to interact with the public at the unskilled or semiskilled level was moderately limited and that her ability to interact with supervisors was moderately limited at the unskilled and semiskilled levels (*Id*.) The ALJ also found Stetson's ability to interact with coworkers was mildly limited at the unskilled level and moderately limited at the semiskilled level. (*Id*.) The ALJ determined that Stetson's ability to respond appropriately to work pressures in the usual work setting was moderately limited at the unskilled level and markedly limited at the semiskilled level and that Stetson's ability to respond appropriately to changes in the usual work setting was moderately limited at the unskilled level and markedly limited at the semiskilled level. (*Id*.)

Reviewing Dr. England's testimony and the ALJ's conclusions, it is apparent that the ALJ essentially found that Stetson suffered from the same degree of limitations as identified by Dr. England. Dr. England generally testified that Plaintiff had mild to moderate limitations in performing simple and repetitive work and moderate to marked limitations in performing more complex tasks. In essence, the

7

ALJ reached the same conclusion, particularly, that Stetson had mild to moderate limitations in performing at the unskilled level and moderate to marked limitations at the semiskilled level. (Tr. 26.) Furthermore, it is important to point out that the ALJ did not simply adopt the limitations identified by Dr. England. Rather, the ALJ made clear that his conclusions were based on the record as a whole. *See [Pearsall v. Massanari, 274 F.3d 1211, 1217-18 (8th Cir. 2001)](#)* ("It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations."). The court concludes that substantial evidence supports the ALJ's RFC finding.

Stetson further complains that the ALJ's hypothetical question to the vocational expert was improper because it failed to incorporate all the limitations identified by Dr. England. The ALJ's hypothetical asked the vocational expert to consider an individual with a vocational profile identical to Stetson, having the following characteristics:

> This individual has the ability to perform a full range of sedentary work. This individual requires an environment that contains no more than moderate concentrations and be not concentrations even but ambient air quality that has no more than moderate smoke, dust or fumes . . . This individual cannot work in extreme cold, extreme heat or extreme humidity. This individual cannot work around moving machinery . . . She can work in areas which have moving machinery, so long as they are not within her work station . . . She cannot work, if I didn't say this, at unprotected heights. Her ability to understand, remember and carry out short, simple instructions, at the unskilled level, where those instructions are limited to one, two or three-step instructions is a mild limitation. The semiskilled level, as that term is defined, she has a moderate limitation. Regarding detailed instructions, at the unskilled level, which is a one, two or three-step, if there are such detailed instructions that can fit within that limitation at the unskilled level, the limitation is moderate. Semiskilled, the limitation is marked. Carrying

8

> out the limitation is marked. Making judgments on simple, work-related decisions, at the unskilled level, is mild, at the semiskilled level is moderate. Interacting with the public, at the unskilled level or at the semiskilled level is moderate due to limitations. However, if the contact - - well, no, they're moderate period, at both levels. Interaction with coworkers is mild at the unskilled level and moderate and the semiskilled level. Interacting appropriately with supervisors is moderate at the unskilled level and moderate the semiskilled level. Responding appropriately to work pressure in a usual work setting, at the unskilled level, is moderately limited, at the semiskilled level is marked. Responding appropriately to changes in a usual work setting is moderately limited, a semiskilled level is marked. For those categories for which I did not identify an impairment at the skilled level, those are all extreme . . .

(Tr. 857-58.) In response to this hypothetical question, the vocational expert testified that such an individual could perform work at the unskilled level, including the positions of assembler and hand packager. (Tr. 859.)

Again, Stetson is correct that the ALJ did not expressly incorporate each of the limitations identified by Dr. England into his hypothetical question. However, reviewing the record, it is apparent that the ALJ's hypothetical is consistent with Dr. England's testimony. Moreover, although the ALJ did not adopt each of Dr. England's functional limitations, he was not required to do so. "The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Lacroix v. Barnhart,* 465 F.3d 881, 889 (8th Cir. 2006) (quoting *Hinchey v. Shalala,* 29 F.3d 428, 432 (8th Cir. 1994)). An ALJ may omit any limitations from his hypothetical question to the vocational that he finds not fully credible or supported by the record. *Harvery v. Barnhart*, 368 F.3d 1013, 1016-17 (8th Cir. 2004). The ALJ made clear that his assessment of Stetson's RFC was made on the record as a whole, not merely from Dr. England's testimony regarding Stetson's functional limitations. Accordingly, the ALJ did not err by omitting or slightly rephrasing the

9

limitations in the hypothetical question posed to the vocational expert.

In support of her argument that the ALJ's hypothetical question was improper, Stetson points out that when her attorney asked the vocational expert whether an individual having the "moderate or marked" limitations identified by Dr. England as affecting Stetson could perform work existing in the national economy, the vocational expert testified that such an individual could not. However, Stetson's counsel's hypothetical question did not completely capture Dr. England's testimony. Dr. England testified that the limitations he assessed included a range to account for the complexity of tasks or work. (Tr. 843-44.) The ALJ's hypothetical accounted for this variance. The ALJ's question stated that Stetson had mild to moderate limitations in performing unskilled work, moderate to marked limitations in performing semiskilled work and extreme limitations in performing skilled work. (Tr. 858.) Unlike the ALJ's hypothetical, Stetson's counsel's hypothetical, which included moderate to marked limitations, did not explain the reason for this variance. (Tr. 861.) In response to questioning by Stetson's attorney, the vocational expert clarified that in situations where there is a spectrum of "moderate to marked" limitations, the only way to make a judgment about a claimant's ability to work is to consider the extreme end, or the "marked" limitations. (Tr. 862.) Therefore, although Dr. England testified that the degree of limitations experienced by Stetson would often depend upon the complexity of the task or work, the vocational expert was forced to base her assessment on the marked limitations in Stetson's counsel's hypothetical question. (Tr. 844, 861.)

For the reasons explained above, the court concludes that the ALJ's hypothetical question was proper and that substantial evidence supports the ALJ's denial of benefits.

### 2.   *Stetson's Credibility*

Stetson maintains that the ALJ did not properly apply *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) in assessing the credibility of her subjective complaints. Under *Polaski*, in assessing a claimant's credibility, the ALJ must consider the claimant's daily routine; duration, frequency, and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. *Polaski*, 739 F.2d at 1322. An ALJ is not required to discuss each "*Polaski* factor," however. It is sufficient if the ALJ acknowledges and considers the factors before discounting a claimant's subjective complaints. *Halverson v. Astrue,* 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore v. Astrue,* 572 F.3d 520, 524 (8th Cir. 2009)). Stetson concedes that the ALJ adequately cited the rules and guidelines to be used to assess her credibility, but complains that it is impossible to evaluate the process used by the ALJ in evaluating her credibility from the record. Stetson argues that the ALJ's analysis does not satisfy the requirements of *Polaski* or SSR 96-7p[2] because the ALJ did not give specific reasons for his

---

[2] According to SSR 96-7p:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and

credibility determination.  After reviewing the matter, the court concludes that, read as a whole, the ALJ's decision shows that he considered the appropriate factors in reaching a conclusion.

While not limited to one, particular area of the opinion, the ALJ made several observations and statements explaining and supporting his credibility determination. For instance, with respect to Stetson's physical impairments, the ALJ stated that "[t]he claimant testified that [her headaches] are constant and debilitating, but the records do not reflect his throughout.  Rather, these headaches are documented to be no more than occasional and not as intense and described.  Moreover, these headaches appeared to be alleviated with her prescription medications." (Tr. 21-22.) The ALJ also noted that Stetson's medications were relatively effective at controlling her asthma symptoms and that her mental health treatment records indicated that Stetson was not consistently taking her medication.  (Tr. 23, 25.)  Further, the ALJ noted that Stetson's cardiovascular treatment records supported the conclusion that she could perform light work.  (Tr. 25.)  The ALJ, although not in the same section of his decision, pointed out that Stetson's cardiologist found that Stetson's mitral value repair was excellent and that she was only mildly delayed as a result of her heart condition.  (Tr. 22.)  Still, despite this evidence, the ALJ gave Stetson the benefit of the doubt and limited her to sedentary work.  (Tr. 25.)

The ALJ also acknowledged that Stetson had difficulty working at a fast pace due to concentration and other difficulties, but, pointing to Stetson's ability to ride a bus and part-time job at a grocery store, concluded that Stetson could work steadily at a slow and adequate pace when performing simple tasks.  (Tr. 24-25.) Additionally, the ALJ made clear that his credibility finding was based, in part, on the

---

> fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

SSR 96-7p, 1996 WL 374186, *4 (S.S.A., July 2, 1996).

medical expert's testimony, who, as noted by the ALJ, reviewed the medical record and concluded that Stetson was not as limited as she alleged. (Tr. 24-25.) The ALJ discussed the medical expert's opinion that other medical reports in the case record were not supported by standardized tests and noted that the available medical evidence was consistent with Dr. England's analysis. (Tr. 24.)

While the ALJ's decision might have been more clearly organized and explicit, it does contain reasons for the finding on credibility which are supported by the record. Reading the opinion in its entirety, the court concludes that the ALJ's decision and analysis was "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at * 2 (S.S.A., July 2, 1996).

The ALJ is responsible for deciding questions of fact, including the credibility of a claimant's subjective testimony about his or her limitations. *See Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Id.* at 714. In this case, the ALJ pointed to substantial evidence in the record supporting his decision to discount Stetson's subjective allegations. As such, this court defers to the ALJ's credibility finding.

### *CONCLUSION*

For the reasons stated, and after careful consideration of each argument presented in Stetson's brief, I find that the Commissioner's decision is supported by substantial evidence on the record as a whole and is not contrary to law.

Accordingly,

IT IS ORDERED that judgment shall be entered by separate document providing that the decision of the Commissioner is affirmed.

January 31, 2011.

> BY THE COURT:
> *Richard G. Kopf*
> United States District Judge

---

\* This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.